United States District Court
Southern District of Texas
**ENTERED**
July 20, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:20-cv-00037

MAUDESTER WOODARD-HALL, *PLAINTIFF*,

v.

STP NUCLEAR OPERATING COMPANY, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Before the court is Maudester Woodard-Hall's motion to remand.[1] Having considered the parties' arguments and the applicable law, and for the reasons discussed below, the court grants Woodard-Hall's motion to remand.

## I. BACKGROUND FACTS

STP Nuclear Operating Company owns and operates a nuclear power plant in Matagorda County. Woodard-Hall began working for STP in 1985 as a security coordinator.[2] In 2015, STP promoted Woodard-Hall to supervisor of access authorization, fitness for duty, and badging, where she was responsible for

---

[1] Dkt. 9.

[2] Dkt. 15 at 3–4.

managing STP's access-authorization and fitness-for-duty programs on a day-to-day basis.[3]

Federal regulations require the identity of persons granted or denied unescorted access to nuclear facilities be "made available" to all such facilities and contractors. STP, like other nuclear facilities in the country, uses the Personal Access Data System ("PADS"). PADS is a computer system and central database managed by the Nuclear Energy Institution that tracks and shares information related to security restrictions associated with individuals in the nuclear industry.[4]

Nuclear facilities rely on information uploaded to PADS to make critical decisions. For example, if an individual is denied unescorted access authorization, 10 C.F.R. § 73.56(h)(3) prevents any other nuclear facility from granting that individual access, whether escorted or unescorted.[5] Therefore, "[i]f the shared information used for determining [an] individual's trustworthiness and reliability changes or new or additional information is developed about the individual," federal law demands the nuclear facility that acquires this information "correct or augment the data and ensure it is shared with [other nuclear facilities]."[6] Further, "[i]f the changed, additional or developed information has implications for

---

[3]   *Id*. at 4.

[4]   *See Fla. Power & Light Co. v. Nuclear Energy Inst., Inc.*, 18-CV-80118, 2018 WL 3089341, at *1 (S.D. Fla. May 10, 2018) (describing PADS as "a database that facilitates the screening of workers in commercial nuclear power plants by listing information relevant to work in a nuclear power plant, such as the date of a worker's last grant of unescorted access, radiation dosage, and psychological testing").

[5]   10 C.F.R § 73.56(h)(3).

[6]   10 C.F.R. § 73.56(o)(6)(i).

adversely affecting an individual's trustworthiness and reliability, the [person] who discovered or obtained the new, additional or changed information" must, "on the day of the discovery," inform the nuclear facility "under which the individual is maintaining his or her unescorted access or unescorted access authorization status of the updated information."[7]

As STP's supervisor of access authorization, fitness for duty, and badging, Woodard-Hall was responsible for, among other things, (1) ensuring that individuals seeking unescorted access met certain qualifications; (2) inputting personnel data related to those individuals into PADS; and (3) ensuring that those granted unescorted access remained trustworthy, reliable, and fit for duty.[8]

In June 2018, Woodard-Hall learned of an investigation concerning "a large [backlog] of nuclear files that were reportedly found in [the office of one of her subordinates] that contained denial and administrative data that were not input into [PADS]."[9] According to STP, an anonymous complaint by one of its employees to the Nuclear Regulatory Commission ("NRC") prompted the investigation.[10]

Ultimately, STP concluded that Woodard-Hall "failed to provide proper oversight of her staff to ensure that [a]ccess[-a]uthorization files were processed consistent with NRC regulatory requirements, and the department failed to

---

[7]   *Id.*

[8]   *See* Dkt. 1–5 at 4.

[9]   *Id.* at 14–16.

[10]  Dkt. 10 at 2.

process more than 350 files in violation of NRC regulations."[11] Following its investigation, STP placed Woodard-Hall on decision-making leave and removed her as supervisor of access authorization, fitness for duty, and badging.[12] Though STP is adamant it offered her "an alternative but comparable position" as supervisor of its "All Hazards Group,"[13] Woodard-Hall views things differently; she contends STP humiliated her in front of her peers and placed her in a no-win situation—either accept a demotion or leave the company to which she had devoted over three decades of her life.[14] On July 9, 2018, Woodard-Hall tendered her "forced retirement letter."[15]

## II. PROCEDURAL HISTORY

On October 23, 2019, Woodard-Hall sued STP in the 130th Judicial District Court of Matagorda County[16] alleging STP discriminated against her on the basis of her age, race, and sex, in violation of the Texas Commission on Human Rights ("TCHRA").[17] Although not expressly pleaded, Woodard-Hall also appears to claim

---

[11] *Id.*

[12] Dkt. 1–5 at 20.

[13] Dkt. 10 at 5.

[14] Dkt. 1–5 at 21–22.

[15] *Id.* at 22.

[16] *Maudester Woodard-Hall v. STP Nuclear Operating Co.*, Case No. 19-E-0690, in the 130th Judicial District Court of Matagorda County, Texas.

[17] Dkt. 1–5 at 24; *see* Tex. Lab. Code § 21.001 *et seq.*

4

STP retaliated against her because "she had prevented them many times from violating the NRC rules."[18] [19]

STP timely removed the case based on federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1441, arguing federal law and corresponding safety regulations promulgated by the NRC preempt Woodard-Hall's state-law claims.[20] STP reasons that Woodard-Hall's claims fall within the "preempted zone of nuclear safety" because NRC regulations require that STP: (1) maintain a system and procedures for the secure storage and handling of STP's access-authorization files; (2) investigate any deviation from regulatory requirements involving its access-authorization department; and (3) take "prompt corrective action."[21] Thus, STP contends it was "mandated by NRC regulations" to "take such corrective action in attempting to move [Woodard-Hall] out of her role in [a]ccess [a]uthorization in order to remedy federal regulatory requirements and ensure that it maintained a safety-conscious work environment. . . ."[22]

### III.  REMOVAL JURISDICTION

Federal courts are courts of limited jurisdiction and must presume that a suit lies outside this limited jurisdiction.[23] The removing party has the burden to

---

[18]   *Id*. at 20.

[19]   In her response to STP's motion to remand, Woodard-Hall argues she is pursuing claims for both discrimination and retaliation. *See* Dkt. 10 at 2 ("Plaintiff brought discrimination and retaliation claims under the [TCHRA].").

[20]   Dkt. 1 at 2.

[21]   *Id*. at 5 (citing 10 C.F.R. Pt. 50, App'x B).

[22]   *Id*.

[23]   *Kokkohen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Scalia, J.).

present facts showing that federal subject-matter jurisdiction exists, and any doubts concerning the propriety of removal are construed against removal. Whether a case may be removed is a question of federal law to be decided by federal courts with the removal statute strictly construed.

A defendant may remove an action to federal court only if that court has original subject-matter jurisdiction over the action.[24] If, as here, the parties are not diverse, there must be a federal question for the federal court to have jurisdiction. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded-complaint rule," which provides that federal jurisdiction exists only when a federal question appears on the face of the plaintiff's properlypleaded complaint.[25] "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."[26] Thus, a plaintiff with a choice between federal and state-law claims may opt to proceed in state court by asserting only state-law claims, thereby defeating the defendant's ability to remove.[27]

The complete-preemption doctrine (sometimes referred to as "artful-pleading doctrine" or "artfully-pleaded-complaint exception") is an exception to the well-pleaded-complaint rule and applies when a federal statute wholly

---

[24] *See* 28 U.S.C. § 1441(a).
[25] *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).
[26] *Id.*
[27] *See id.*

displaces a state-law cause of action through complete preemption.[28] "In the most general terms, the doctrine provides that a plaintiff cannot frustrate a defendant's right to remove by pleading a case without reference to any federal law when the plaintiff's claim is necessarily federal."[29] In other words, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all."[30]

The central inquiry in a complete-preemption analysis is "whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under the state law."[31]

## IV. ANALYSIS

In its response to the motion to remand, STP argues that "[t]here are two types of federal preemption at issue here: field preemption and conflict preemption."[32] But just one paragraph later, STP brings up "complete preemption," arguing "complete preemption exists here because the federal

---

[28] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *see Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) ("[T]he artful pleading doctrine applies only where state law is subject to complete preemption." (citing *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 189 (5th Cir. 2001))).

[29] CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 14C, Federal Practice and Procedure § 3722.1 (4th ed. 2016).

[30] *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008) (internal quotations omitted).

[31] *Id.*

[32] Dkt. 10 at 11.

government is responsible for the safety of nuclear technology."[33] STP's conflation of ordinary (or defensive) preemption with the doctrine of complete preemption is a microcosm of the more general confusion surrounding preemption's effect on removal jurisdiction.

Three forms of preemption are frequently discussed in judicial decisions: express preemption, conflict preemption, and field preemption.[34] These three, however, are forms of "ordinary preemption" that serve only as defenses to a state-law claim and do not create removal jurisdiction.[35]

Complete preemption, on the other hand, "is *not a distinct type of preemption at all*, but rather a jurisdictional rule positing that all claims of a given topic arise under federal law, thereby paving the way for removal of an action to federal court. . . ."[36] It applies only where Congress intended a federal law to

---

[33]    *Id.*

[34]    *See, e.g., Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) ("Federal law may preempt state law under the Supremacy Clause in three ways—by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'" (citation omitted)).

[35]    *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005); *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005); *see Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("Complete preemption, which creates federal removal jurisdiction, differs from more common 'ordinary preemption' . . . which does not."); *Bernhard*, 523 F.3d at 551 ("a 'defense that relies on . . . the pre-emptive effect of a federal statute will not provide a basis for removal.'" (citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003))); *see generally Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 468 n.3 (5th Cir. 2016) (contrasting complete preemption, which "establishes federal subject matter jurisdiction over a state law claim," from ordinary preemption, which "is an affirmative defense that a defendant can invoke to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law." (quotations omitted)).

[36]    *Smith v. BAC Home Loans Servicing, LP*, 769 F. Supp. 2d 1033, 1039 n.7 (S.D. W. Va. 2011) (emphasis added and citations omitted); *see Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000) ("'[C]omplete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field.")

8

"replace" or "supplant" a state-law cause of action with a federal cause of action which may then be removed to, and proceed in, federal court.[37]

Unfortunately, "[t]he inclusion of the term 'preemption' within the [complete-preemption] doctrine's label, while not inaccurate, has enkindled a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption."[38] And this confusion has led countless litigants (as well as some courts) to "equate[ ] the defense of field preemption, which defeats a plaintiff's state-law claim because federal law 'occupies the field' [in] which the state-law claim falls, with the doctrine of complete preemption, which creates federal subject-matter jurisdiction over preempted state-law claims."[39]

Admittedly, "the defense of field preemption and the doctrine of complete preemption both rest on the breadth, in some crude sense, of a federal statute's preemptive force."[40] Still, the two types of preemption are distinct.[41] And this

---

[37] *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013); *see also Beneficial Nat'l Bank*, 539 U.S. at 11.

[38] *Blab T.V., Inc. v. Comcast Cable Communs., Inc.*, 182 F.3d 851, 854 (11th Cir. 1999); *see Thomas v. Hanley*, CIV. A. 97-2443, 1997 WL 563402, at *3 n.3 (E.D. Pa. 1997) ("Although preemption and complete preemption are two entirely different concepts, they are easily confused."); *see generally Johnson*, 214 F.3d at 632 ("Ordinarily, the term federal preemption refers to ordinary preemption . . ." (citation omitted)).

[39] *Sullivan*, 424 F.3d at 272 n.7; *see Evans v. Infirmary Health Servs.*, 634 F. Supp. 2d 1276, 1289 (S.D. Ala. 2009) ("Although they are often confused by courts and litigants alike, complete preemption and defensive preemption are distinct questions, dependent on different tests and bearing different implications for a lawsuit."); *see also* S. Candice Hoke, *Preemption Pathologies and Civic Republican Values*, 71 B.U.L. Rev. 685, 747 (1991) ("Another pathology attending field preemption lies in some courts' confusion of field preemption with the complete[-]preemption doctrine.").

[40] *Sullivan*, 424 F.3d at 272 n.7.

[41] *Id.*; *see Retail Prop. Tr. v. United Broth. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 (9th Cir. 2014) ("[T]he doctrines [of complete preemption and ordinary preemption] serve distinct purposes and should be kept clear and separate in our minds." (citation omitted)); *Meade v. Avant of Colo., LLC*, 307 F. Supp. 3d 1134, 1140 (D. Colo. 2018) ("The doctrine of complete preemption should not be confused with ordinary preemption, which occurs when there is a defense of 'express preemption,' 'conflict preemption,'

distinction is crucial because "if complete preemption does not apply, but the plaintiff's state[-]law claim is arguably preempted . . . the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption."[42]

Complete preemption is rare. The Supreme Court has construed only three federal statutes to so preempt their respective fields as to authorize removal of actions seeking relief exclusively under state law.[43]

To establish that federal law completely preempts Woodard-Hall's claims, STP must demonstrate that "'(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is clear [c]ongressional intent that claims brought under the federal law be removable.'"[44] In *Beneficial Nat'l Bank*, the Supreme Court modified the last prong from "congressional intent that the claim

---

or 'field preemption' to state[-]law claims."); *Virgil v. Reorganized M.W. Co.*, 156 F. Supp. 2d 627, 630 (S.D. Miss. 2001) ("Field preemption . . . might seem identical to complete preemption, but the two are analyzed differently due to the element of removal jurisdiction." (internal citations omitted))

[42] *Bd. of Cty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 964 (D. Colo. 2019) (citation omitted); *see JN'P Enterprises, LLC v. Companion Life Ins. Co.*, CIV.A. H-14-3633, 2015 WL 2341791, at *6 (S.D. Tex. May 13, 2015) (Lake, J.) ("In the absence of complete preemption, the district court 'lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.'" (quoting *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999)); *Haulmark Servs. v. Solid Grp. Trucking, Inc.*, CIV.A. H-14-0568, 2014 WL 5768685, at *1 (S.D. Tex. Nov. 5, 2014) (Harmon, J.) ("Complete preemption creates federal removal jurisdiction, while ordinary preemption, which is a federal defense and may arise by express statutory provision or by a direct conflict between the operation of federal and state law, but does not appear on the face of the complaint, does not create removal jurisdiction." (citing *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)).

[43] *See Fayard v. Ne. Vehicle Services, LLC*, 533 F.3d 42, 45 (1st Cir. 2008) ("the Court has applied the doctrine [of complete preemption] in a few contexts: labor contracts, . . . claims for benefits from plans regulated by [the Employee Retirement Income Security Act], . . . and usury claims against federally chartered banks . . ." (internal citations omitted)).

[44] *Gutierrez*, 543 F.3d at 252 (citing *Johnson*, 214 F.3d at 632).

be removable" to "congressional intent that the federal action be [the] exclusive [cause of action for the claims at issue.]"[45]

STP has not satisfied its burden.[46] Indeed, STP cannot even satisfy the first requirement of complete preemption: the existence of a civil-enforcement provision in the purportedly preemptive statute. STP has not identified—and the court has not found—any such provision in the cited federal nuclear statutes[47] under which Woodard-Hall could bring her discrimination claims against STP. This, alone, warrants remand.[48]

Instead, STP cites various NRC regulations, arguing that it was required to investigate the anonymous safety complaint and take corrective action (*i.e.*, remove Woodard-Hall from her position).[49] But this is simply an affirmative

---

[45] *Id.* (citing *Bernhard*, 523 F.3d at 553).

[46] *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("the burden of establishing federal jurisdiction rests on the party seeking the federal forum").

[47] Operators of nuclear power plants must follow the requirements of federal nuclear laws, including the Atomic Energy Act, 42 U.S.C. § 2011 *et seq.*, the Energy Reorganization Act, 42 U.S.C. § 5801 *et seq.*, and the accompanying regulations promulgated by the NRC.

[48] *See Beneficial Nat'l Bank*, 539 U.S. at 8 (holding that complete preemption occurs where "the federal statute[] at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action"); *accord Bernhard*, 523 F.3d at 551 ("Federal question jurisdiction therefore exists where, because state law is completely preempted, 'there is, in short, no such thing as a state-law claim.'" (citation omitted)); *Dutcher v. Matheson*, 733 F.3d 980, 986 (10th Cir. 2013) ("The existence of a potential federal cause of action is critical; complete preemption is not the same as preemption." (citations omitted)); *López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, coupled with a federal cause of action for wrongs of the same type." (quoting *Fayard*, 533 F.3d at 46)); *Hart*, 724 F.3d at 1254 ("Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it supplants state law causes of action."); *Lontz*, 413 F.3d at 442 ("The *sine qua non* of complete preemption is a pre-existing federal cause of action that can be brought in the district courts."); *cf. Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 808–09 (5th Cir. 2011) (finding complete preemption under the federal statute at issue because it allows an injured party to file a complaint with an administrative authority created by the statute or bring a civil action in federal court, thus providing a federal cause of action over which a district court has original jurisdiction).

[49] *See* Dkt. 1 at 5–9.

11

defense to Woodard-Hall's claims, not a basis upon which the court can exercise removal jurisdiction.[50]

Moreover, in its briefing STP notably relies exclusively on case law concerning ordinary preemption, not complete preemption.[51] As explained above, ordinary preemption cannot create removal jurisdiction.

"In the absence of complete preemption, the district court 'lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.'"[52] Since complete preemption is not present in this case, removal was improper, and the court must remand the case to the state court in which it was originally filed.[53]

*** 

---

[50] *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983) ("a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case").

[51] *See Tomek v. STP Nuclear Operating Co.*, 3:17-CV-00340, 2018 WL 4403281, at *5 (S.D. Tex. Aug. 28, 2018) (Edison, M.J.) ("Field preemption, therefore, bars [the plaintiff's] TCHRA claim."), *report and recommendation adopted*, 3:17-CV-00340, 2018 WL 4384170 (S.D. Tex. 2018) (Hanks, J.); *Hanni v. Cleveland Elec. Illuminating Co.*, 87 Ohio App. 3d 295, 302–03, 622 N.E.2d 340 (Ohio Ct. App. 1993) (dismissal based on conflict preemption); *Boldt v. N. States Power Co.*, 259 F. Supp. 3d 954, 963 (D. Minn. 2017) (dismissal based on field and conflict preemption), *aff'd*, 904 F.3d 586 (8th Cir. 2018).

[52] *JN'P Enterprises, LLC*, 2015 WL 2341791, at *6 (quoting *Giles*, 172 F.3d at 337); *see Lontz*, 413 F.3d at 441 ("Even if [defensive] preemption forms the very core of the [underlying] litigation, it is insufficient for removal." (citing *Caterpillar Inc.*, 482 U.S. at 393)).

[53] Earlier this year, this court faced another motion to remand in a case STP removed under very similar circumstances and involving nearly identical arguments. *See Brown v. STP Nuclear Operating Co.*, 3:18-CV-441, 2020 WL 1547436, at *1–2 (S.D. Tex. Mar. 25, 2020). In that case, as in this one, the court granted the motion to remand. *Id*. Though the opinion in *Brown* does not distinguish between the defense of field preemption and the doctrine of complete preemption as this one does, the court remains confident its decision in *Brown* was correct. There, as here, STP failed to carry its burden as the removing party to show that federal law completely preempted the plaintiff's state-law claims for discrimination. *Id*.; *see Howery*, 243 F.3d at 916 ("the burden of establishing federal jurisdiction rests on the party seeking the federal forum").

For the foregoing reasons, the court grants Woodard-Hall's motion to remand. Accordingly, this action is remanded to the 130th Judicial District Court of Matagorda County, Texas. The clerk of court is directed is directed to transmit the case file to the 130th Judicial District Court.

Signed on Galveston Island on this, the 20th day of July, 2020.

                                                              JEFFREY VINCENT BROWN
                                                              UNITED STATES DISTRICT JUDGE